# Western Mutual Life Ass'n v. Pierre B. Robinson et al.

1. VERDICTS—*Contrary to the Evidence.*—From a careful examination of the evidence and a full consideration of its details and the circumstances shown by it this court concludes that its clear preponderance was with the plaintiff and that the verdict and judgment for the defendant should not be allowed to stand.

2. CONTRACTS—*Failure of a Servant to Perform Amount of Work Agreed on.—Notice of Termination of Contract.*—A contract of employment provided that in case the employe should fail to perform a certain amount of work therein mentioned, the contract should "thereupon cease and terminate and become null and void." *Held,* that a failure of the employe to perform the stipulated amount of work, terminated the contract, and that it was not necessary for the employer to give notice of the termination thereof.

Debt, on a bond. Error to the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1897. Reversed and remanded. Opinion filed March 3, 1898.

MOSES, ROSENTHAL & KENNEDY, attorneys for plaintiff in error.

CUSTER, GODDARD & GRIFFIN, attorneys for defendants in error.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE COURT.

Plaintiff in error brought an action of debt against defendants in error, declaring on the common counts and a special amended count, which sets up a joint and several bond of defendants in error of the penalty of $10,000, the condition of which was, after reciting that defendant in error Robinson had been appointed agent of plaintiff in error, that if he should in all respects well and truly serve plaintiff in error as such agent during his continuance in office, should keep and perform all the provisions and stipulations of the agreement, and account and pay over to plaintiff in error all moneys which, under said agreement or otherwise,

he might receive for plaintiff in error, or which might become due from him to plaintiff in error, and should pay over all other sums of money which might come to his possession belonging to plaintiff in error, and would, upon the termination of his agency, from whatever cause, deliver to plaintiff in error all moneys and other property in his hands belonging to plaintiff in error, and should pay all of his indebtedness to plaintiff in error, however arising, then said bond was to be void, otherwise to remain in full force and effect. This count also, after alleging Robinson's agency, and that he received money and property of plaintiff in error as such agent, alleges that he has not accounted for nor paid over the same to plaintiff in error; that he has not paid his indebtedness to plaintiff in error; that there was paid to Robinson as agent of plaintiff in error premiums on insurance policies amounting to the sum of $3,000, which he had failed to account for and has not paid over to plaintiff in error; that there was advanced to Robinson as agent by plaintiff in error, under his agreement, $3,000, which he had neglected and refused to pay back to plaintiff in error on request.

Defendants in error filed their several pleas, denying the making of the bond, *nil debet*, alleging that Robinson accounted with and paid to plaintiff in error all premiums received, denying that plaintiff in error advanced any money to Robinson which he had not accounted for, or paid to plaintiff in error, and also alleging payment by Robinson to plaintiff in error, of the sum of $3 for every person examined by plaintiff in error, at Robinson's instigation, after September 23, 1895.

These pleas were all traversed by plaintiff, and a trial before the court and a jury resulted in a verdict and judgment for defendants in error, from which this writ of error is prosecuted. It is claimed the verdict is against the clear preponderance of the evidence; that the court erred in the exclusion of certain evidence offered by plaintiff, and in its instructions to the jury, which were oral by agreement of the parties.

The evidence shows that Robinson as principal, and Brown

as surety, made their bond under seal in the penalty of $10,000, dated September 23, 1895, with the condition substantially as alleged in the special count.

The agreement of agency between plaintiff in error and Robinson, referred to in the bond, and also dated September 23, 1895, has the following, among other provisions, viz.:

"IV.   After the agent shall have sold $500,000 of insurance, on which the first premium has been paid, seventy-five per cent of the entire renewal interest shall become non-forfeitable for a period of ten years from the date of the termination of the contract. It is also agreed that the party of the first part will advance to party of the second part an additional twenty per cent of the first annual gross premiums, or any part thereof, as received by the association placed hereunder. The purpose of this advance being to assist in handling sub-agents and organizing the field; said advance to be charged to and deducted from the renewals accruing hereunder.

"V.   Either party may terminate this agreement unless otherwise terminated by its own conditions, by giving to the other ninety days' notice in writing, personally or by mail, to that effect.

"VI.   It is further understood and agreed that if the said agent shall, during any three months, fail to tender to said association acceptable applications for membership to the average amount of $10,000 per month, upon which the first has been received in cash by the association, this contract shall thereupon cease and terminate, and become and thereafter be null and void."

"XII.   It is expressly agreed that any or all advances by said first party to second party, on account of the commissions accruing hereunder, shall bear interest at the rate of six per cent per annum, and shall be deemed and held to be a loan to and a debt of second party, and in the event of the termination of this agreement such debt shall immediately become due and payable by second party to first party."

"XVI.   All collections made under this agreement shall

be promptly paid over to first party, making such deductions only as are herein allowed, and second party agrees to hold securely all moneys belonging to the association in trust, separate and distinct, and to make no personal or other use of such funds, except to remit them, and shall return, at the proper time or on demand, to the association, all uncollected premium receipts or undelivered policies sent to him for delivery and collection."

Subsequently, on February 26, 1896, the association and Robinson made another agreement, containing, in substance, the same provisions as the agreement of September 23, 1895, except that the provisions Nos. IV and V, above recited, were changed, viz.:

"IV. That until further notice the party of the first part will pay at the end of each week, commencing one week from the date hereof, to second party, or order, the sum of $70.85, and that these weekly payments and all moneys which have been paid or advanced by the association under previous agreements will be considered as having been paid to second party hereunder as an advance on account of commissions accruing hereunder, and that second party release said first party from all claims arising under any previous agreements, except that it is understood that all business written under the contract of September 23, 1895, shall be considered as having been written under this contract, and that on said business commissions and renewals will be allowed as provided herein.

"V. All previous contracts or agreements made by and with the said first party, or association, except the agent's bond, are hereby canceled, and either party, or the association, may terminate this agreement, unless otherwise terminated by its own conditions, by giving to the other ninety days' notice in writing, personally or by mail, to that effect," and except also, that the latter agreement provides for the payment to the agent of $4 and $2, respectively, per thousand of insurance for renewals on certain classes of policies specified, instead of $3 and $1.50, respectively, provided by the agreement of September 23, 1895.

The principal point of controversy was as to whether Robinson's contract of agency was terminated before suit brought by the association. In this regard the court instructed the jury, viz.: " The plaintiff claims that it (the contract) was terminated. The defendant says it was not. The plaintiff bases its claim of termination upon clause number 6 of the contract, which reads that if the said agent shall, during any three months, fail to tender to the said association acceptable applications for membership to an average of $10,000 per month, this contract shall thereupon cease and terminate and become then and thereafter null and void, and it is claimed by the plaintiff that the evidence here shows that the agent did not during three successive months tender to the association acceptable applications for membership to an average amount of $10,000 per month. Counsel are not agreed, it seemed from their addresses to you, as to the question whether there is such evidence in the case, one contending that there is, the other denying it. It is for you to determine what, if any, evidence there be in this regard, the court making no intimation whatsoever either one way or the other. I do not wish to be understood by anything I may have said or shall hereafter say, that there is any evidence upon the subject or that there is no evidence upon the subject. That is wholly for you to determine.

Then the next question would be, if you find, from the evidence, that there was a failure to tender such applications as I just now called your attention to, then it becomes your duty to determine whether a notice was given by the association to Robinson to determine the contract. You remember, of course, the evidence in that regard. There again is distinct and sharp controversy between the parties, one side maintaining that notice was given, the other side maintaining that it was not. That is a question for you to determine, gentlemen—from the evidence, of course. And the company can not recover anything on account of advances—whatever advances may have been made—unless the evidence shows both that there was a failure by Robin-

son to tender to the association applications for membership to an average amount of $10,000 for three successive months, and further, that notice of termination of the contract was given as claimed by the plaintiff."

On behalf of the association the evidence was positive that Robinson had failed, for the three months just prior to June 1, 1896, to tender to the association acceptable applications for insurance to the average amount of $10,000 per month, upon which the first premium had been received in cash by the association, and the only evidence by defendants on this point was that of Robinson, in which he said he did not remember any conversation on that subject. As to the termination of the agreement of agency, two witnesses, on behalf of the association, testified that on or about June 1, 1896, a written notice terminating the agreement was handed to Robinson in the office of the association, and a letter-press copy of the notice taken from the copybook of the association was produced on the hearing, which is, viz.:

"June 1, 1896.

Mr. Pierre B. Robinson, Lamont, Ill.

Dear Sir: Please take notice that the agreement made the 26th day of February, 1896, between this association and yourself, has, by your failure to comply with the terms of Article VI of said agreement, ceased and terminated, and has become and is null and void.

According to Article XII of the said agreement, your indebtedness to the association is due and payable, and we respectfully ask that your early attention be given to the matter.                    Respectfully,

Thomas Rhodus, President."

The only evidence opposed to this was the denial of Robinson that he received such a notice or any notice, verbal or written, of the cancellation of the contract.

From a careful examination of the evidence on these points, and a full consideration of its details and the circumstances shown by it, we are of the opinion that its clear preponderance is with the association, and that the trial

court should have awarded a new trial. But if we are wrong on the question of fact as to notice to Robinson, still we are of opinion that no notice of the canceling of the contract need to have been given. The sixth clause of the agreement provides that if Robinson, during any three months, shall fail to tender to the association acceptable applications for insurance to an average amount of $10,000 per month, the contract "shall thereupon cease and terminate and become null and void." Language could not be plainer, and we therefore think the learned trial judge erred when he instructed the jury that the association could not recover unless it had given notice of the termination of the contract. It was only necessary for the association to show a failure by Robinson, as it did, to tender to the association acceptable applications for insurance to an average amount of $10,000 per month, for the three months just prior to June 1, 1896, and also that Robinson was indebted to it at the time suit was brought. 2 Chitty on Contracts, 1070 and 1071; Wilson v. Roots, 119 Ill. 379; 398.

It is, however, immaterial in the view we take, whether the instructions of the court were or were not erroneous, as the weight of the evidence was clearly with the plaintiff. Also, both the agreements, by the words in clause V, " unless otherwise terminated by it own conditions," clearly show that both the parties contemplated their termination upon the failure of Robinson to procure the amount of insurance he agreed to tender to the association, as provided by the agreements. These words could have reference to no other provisions of the agreements, because that provision (No. 6) is the only one which says that " the contract shall thereupon cease and terminate and become and thereafter be null and void."

It is not contended by defendants in error that the evidence fails to show that Robinson is indebted to the association if the agreement of agency was terminated—only that the association has failed to show such termination of the agreement, and for that reason nothing is due from Robinson to the association. The evidence is clear that Robinson

was indebted to the association in divers amounts, which it is unnecessary to here enumerate, if the agency agreement was at an end on the failure of Robinson to perform it in the respect claimed.

Inasmuch' as the other errors complained of may not occur on another trial, it is unnecessary to consider them.

The judgment is reversed and the cause remanded.